[No. 15040. Department One. February 28, 1919.]

NICK VLASTELICA *et al., Appellants,*
v. ANDRIJA BARETICH *et al.,*
*Respondents.*[1]

MASTER AND SERVANT (174)—INJURY TO THIRD PERSON—LIABILITY
OF MASTER—EVIDENCE—SUFFICIENCY. Where the explosion of a gaso-
line tank on a boat was caused by the carelessness of a member of
the crew in spraying distillate over the deck and over a lighted
lantern negligently placed near the opening in the tank, in attempt-
ing to transfer the distillate to the boat after being ordered not to
do so, defendants, the owner of the vessel and the contracting com-
pany furnishing the distillate, having no knowledge of the matter,
are not liable for the death of another member of the crew, killed
by the explosion.

TRIAL (33)—RECEPTION OF EVIDENCE—REOPENING CASE. It is not
error to refuse to reopen a case for further testimony after granting
a nonsuit, where the proposed testimony would not have changed
the result.

Appeal from a judgment of the superior court for
Pierce county, Clifford, J., entered March 22, 1917,
dismissing an action for wrongful death, upon grant-
ing a nonsuit, after a trial on the merits to the jury.
Affirmed.

*Morton T. Hunter* and *Davis & Neal,* for appel-
lants.

*W. L. Sachse* and *Peter David,* for respondents
Baretich *et al.*

*Hadley & Hadley* and *John A. Shackleford,* for re-
spondent Carlisle Packing Company.

MAIN, J.—The plaintiffs, minor children of Visco
Vlastelica, deceased, bring this action by their guar-
dian *ad litem* for the purpose of recovering damages
for the death of their father, which it is claimed, was

[1]Reported in 178 Pac. 825.

caused by the negligence of the defendants Andrija Baretich and the Carlisle Packing Company, a corporation, the wife of Baretich being also joined as a party defendant. After the issues were framed, the cause, in due time, came on for trial before the court and a jury. At the conclusion of the plaintiffs' evidence in chief, the defendants challenged the sufficiency thereof and moved the court to enter a judgment of dismissal. This motion, after argument, was sustained and a judgment was entered dismissing the action. The plaintiffs appeal from the judgment.

The facts are these: The Carlisle Packing Company operates a fish cannery on Lummi Island, in Puget Sound, near the city of Bellingham. The respondent, Baretich, is a fisherman by occupation, and is the owner of the fishing boat "Adriatic" and its equipment. Some time in the early part of July, 1914, Baretich, together with a crew of seven men, left the city of Tacoma on the Adriatic for the purpose of taking fish from the waters of Puget Sound and delivering them to the Carlisle Packing Company. Before having started on this trip, Baretich had contracted to sell whatever fish might be caught to the packing company at a price stipulated. In addition to this price, the packing company was to make him an allowance of $75 for "oil." By oil was meant distillate, which was used instead of gasoline for motive power. The crew and the owner of the boat operated under an arrangement whereby the profits of the venture were to be divided into a certain number of shares, the number of shares being four greater than the number of men upon the boat. Each man was to receive one share and the four extra shares were to go to the "boat." The crew, other than the owner of the boat, were to bear no part of the losses, if any

occurred, or the expenses, except the cost of provisions and oil.

On August the 10th, 1914, the Adriatic, at about one o'clock in the afternoon, landed at the dock of the packing company adjoining its cannery. No fish, at this time, were delivered from the boat to the cannery. Baretich went to the cannery office for the purpose of collecting or receiving a check for the fish which had been delivered prior to that time. After the bookkeeper gave him the check, he asked about the allowance for oil, and was informed that that could not be paid without consultation with the manager, with whom the arrangement had been made and who was not then at the cannery. Baretich then requested the bookkeeper to furnish him oil in order that he might replenish his supply, preparatory to going out on a trip. The bookkeeper told him to see another employee of the company, who was checking fish that was being then delivered from another boat. Baretich sought this employee and arranged for two drums or barrels of oil. The drums were rolled to the edge of the dock. The Adriatic was moved a short distance from its landing, so that it would be adjacent to the drums. The deck of the boat was two or three feet lower than the dock. Baretich and two members of the crew, Frank Rametich and Slavo Turtanich, prepared to transfer the oil from the drums to the tank on the boat. The tank was below the deck but there extended from it to the surface of the deck a pipe or tube on the top of which was a cap.

Baretich requested the captain of the Carlisle I, a boat owned by the packing company and then at the dock, to bring him a hose. In response to this request, a hose about fifteen or sixteen feet in length and about one inch in diameter, was furnished. The

cap was removed from one of the drums and also the one from the top of the tube leading to the tank from the deck of the boat. The distillate was to be transferred from the drum to the tank by syphoning. One end of the hose was inserted in the drum, and Turtanich attempted to cause the flow of oil to start by inserting his thumb in the other end thereof and withdrawing it quickly. This method not being successful, he attempted to start the flow by putting the end of the hose in his mouth and attempting to draw the air therefrom, but the flow of oil would not start. Believing that the hose was defective, Baretich requested the captain of the Carlisle I to bring another hose. The captain of this boat went away for the second hose and Baretich went away on an errand to be gone a few minutes. Before going, he told Rametich and Turtanich to "stay quiet until he came back," evidently meaning that they were to make no further effort to transfer the oil from the drum to the tank in his absence.

At the time Baretich went away, there was a lantern on top of the pilot house of the Adriatic, which was several feet above the deck of the boat, being placed there to comply with the regulations of the Federal government, it being at this time between nine and ten o'clock in the evening. Shortly after Baretich went away on the errand as above mentioned, the captain of the Carlisle I brought another hose and went away. At this time there was no one present or assisting in transferring the oil except Rametich and Turtanich. They did not heed the request of Baretich before he went away that they remain quiet, but attempted, in the same manner as before, to start the flow of oil from the drum through the hose. This being unsuccessful, Turtanich took the

hose and put a portion of it in the water, suddenly drawing it out, and in this way hoping to start the oil flowing. At this time the lantern had been taken from the pilot house, by either Rametich or Turtanich, subsequent to the departure of Baretich and the departure of the captain of the Carlisle I, after he had brought the second hose, and placed on the deck of the boat, two or three feet from the opening to the tank. In this had been placed a funnel. Turtanich, who inserted the outer end of the hose in the water, thinking he would get all the salt water out of the hose before putting it over the funnel leading to the tank, as stated in the appellants' brief,

"carelessly sprayed the hose in such a manner that the oil spilled on the deck and sprayed directly over the flame of the lantern. The boat at once caught fire and the tank exploded, and Visko Vlastelica, who had been lying in his bunk, was so burned in getting out of the boat that he shortly thereafter died from such injuries."

The bunk in which Vlastelica was lying was under the deck in close proximity to the distillate or oil tank. As above stated, the action was brought, claiming that the injuries which Vlastelica sustained from the explosion were proximately caused by the negligence of the respondents. A number of assignments of error are made; but, under the head of "argument," the appellants' brief states that these are so inter-related that there will be no attempt made in the citation of authorities and argument to draw any very decided line of division in their discussion.

It is a well known rule that negligence in cases of this kind is not presumed. Before a recovery can be had, it is necessary to show that the parties who are sought to be charged with liability have failed in some duty which they owed to the injured person, and that

the failure to perform such duty was the proximate cause of the injury. The evidence in this case establishes, beyond controversy, that the cause of the explosion which resulted in the injury and subsequent death of Vlastelica was caused by spraying the distillate, as it came from the hose, over the deck and over the lighted lantern, which was in close proximity thereto. The only expert witness produced, a man of large experience in the handling of gasoline and distillate, testified that where no ''lights or fire'' are around, there is no danger of an explosion in transferring gasoline or distillate in the manner adopted in this case. It is apparent, therefore, that the explosion was caused by the presence of the lantern upon the deck, only a few feet from the opening to the tank in which the funnel had been placed. Neither the packing company nor Baretich, the owner of the boat, had any knowledge that the lantern was moved from its place on top of the pilot house to the deck, until after the explosion. No representative of the packing company was present at this time. Baretich had gone away for a few minutes, directing Rametich and Turtanich to remain quiet until he came back. Upon the trial, appellants made an offer to prove what the custom of the canneries upon Puget Sound was, relative to the character of hose or the device which was used to transfer oil from the drum to the tank on the boat. There was an objection to this line of testimony, which was sustained. In this there was no error because here it is entirely immaterial as to what device other canneries may have used. The explosion was caused, not by the use of the hose without a shutoff, but by reason of the carelessness of Turtanich in spraying the distillate over the deck and over the lighted lan-

tern, which either he or his associate Rametich had caused to be placed near the opening in the tank.

After the court had announced that the motion to dismiss the action would be sustained, the appellants moved the court to re-open the case for the taking of further testimony. This motion was denied. Whether this was an abuse of the trial court's discretion, it is not necessary here to determine. The line of testimony which it was proposed to offer was to the effect that the packing company maintained a station to furnish gasoline and distillate, and that in all cases it furnished the hose by which the gasoline or distillate was to be transferred from the drum to the boat, and that the company had a man in charge of thus delivering gasoline and distillate. Whatever may have been the method of the company in delivering gasoline on prior occasions, the testimony offered would not change, if it had been received, the result in this case. The facts here show that the drums of oil were delivered at the edge of the dock, and that no representative of the packing company took any part in the attempted transfer of the oil, other than that the captain of the Carlisle I, a boat owned by the company, upon request, furnished the hose as above set out.

Appellants' brief states many legal propositions, supported by copious citation of authority with which no issue is taken, but the principles stated are not controlling under the facts of this case.

The judgment will be affirmed.

CHADWICK, C. J., MITCHELL, MACKINTOSH, and TOLMAN, JJ., concur.